# EXHIBIT A

# Harry R. Thomasson, Esq.

3280 Sunrise Highway, Suite 112
Wantagh, New York  11793
Tel. 516-557-5459
hrtatty@verizon.net

Admitted:

Massachusetts
New York

October 31, 2017

New Bedford Housing Court
Civil Clerks Office
139 Hathaway Road
New Bedford, MA  02746

Re:   *Hall, et al., v. Fannie Mae, et al.*

Dear Sirs/Madams:

Please be advised that this office represents Plaintiffs in the within action.  Enclosed herewith please find and accept for filing the following:

1. A Complaint, verified by Plaintiffs;
2. First Affidavit of Reginald Hall;
3. First Affidavit of Angelina Hall;
4. First Affirmation of Harry Thomasson;
5. Emergency Application for a TRO and Preliminary Injunction submitted therewith, along with Exhibits A-G.
6. A check in the amount of $135.00 representing the filing fee for the within.

This matter was originally brought before the Federal District Court in Boston, Massachusetts, Young, J.  That Court instructed undersigned to re-file this action in this Court given the original involvement of this Court in the underlying actions/eviction proceedings.  I shall appear on Friday, November 3, 2017, at 10:00 a.m. to present this to the Court.  I have notified opposing counsel of that appearance date and time (see Exhibit G); if this Court would prefer a different date for the initial, emergency appearance, please so notify me as soon as practical.  However, I am unavailable on Monday, November 6, 2017, to appear in New Bedford.

I remain,

Very truly yours,

Harry R. Thomasson

CC:   Reginald and Angelina Hall

1

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:
PLYMOUTH, SS.

HOUSING COURT DEPT.
SOUTHEASTERN DIV.
Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION
a/k/a FANNIE MAE, and SANTANDER BANK, N.A.
f/k/a/ SOVEREIGN BANK, N.A.**
Defendants

## PLAINTIFFS' EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER and APPLICATION FOR A PRELIMINARY INJUNCTION

Now come the Plaintiffs, Reginald and Angelina Hall, and move this Honorable Court for an Emergency Temporary Restraining Order and Preliminary Injunction as follows:

Emergency Application for a TRO: 1) enjoining and restraining Defendants from evicting Plaintiffs from 52 Ash Street, New Bedford, Massachusetts ("the Premises") during the pendency of the instant action; and 2) enjoining and restraining Defendants from selling the Premises to any individual or entity other than the Plaintiffs during the pendency of the instant action.

Application for a Preliminary Injunction: 1) extending the TRO through the pendency of the instant action; 2) ordering Defendants to turn over ownership of the Premises back to the Plaintiffs; 3) ordering Defendants to act in good faith with regard to all past and future applications submitted by Plaintiffs to Defendants; 4) ordering Defendants to act upon Plaintiffs' modification applications *nunc pro tunc* to the date of Plaintiffs' last mortgage payment and to treat their applications as if it was the date of their last mortgage payment to allow them to be

1

placed in the position Plaintiffs should have been in after following Defendants' encouragement/ advice to stop making mortgage payments; and 5) ordering such other and further and different relief as should be granted to the moving Defendants as to the Court may deem just and proper, together with costs and disbursements.

As reasons, Plaintiffs submit the Affidavits of Reginald Hall, Angelina Hall, and Harry Thomasson, along with the verified Complaint in this action, and Exhibits A-H, all of which (collectively) are attached hereto and incorporated herein by reference.

DATED:  October 31, 2017

Respectfully submitted,

Plaintiffs, by counsel,

HARRY R. THOMASSON
BBO#:  554093

2

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:  
PLYMOUTH, SS.

HOUSING COURT DEPT.  
SOUTHEASTERN DIV.  
Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**  
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**  
**a/k/a FANNIE MAE, and SANTANDER BANK, N.A.**  
**f/k/a/ SOVEREIGN BANK, N.A.**  
Defendants

## ORDER ON PLAINTIFFS' EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER and APPLICATION FOR A PRELIMINARY INJUNCTION

Sufficient cause appearing therefore, **IT IS HEREBY ORDERED** that pending further order of this Court, Defendants are 1) enjoined and restrained from evicting Plaintiffs from 52 Ash Street, New Bedford, Massachusetts ("the Premises"); AND 2) enjoined and restrained from selling the Premises to any individual or entity other than the Plaintiffs; AND 3) a hearing shall be held on the within application for a Preliminary Injunction before this Court on November _____, 2017; AND 4) service of this Order and the papers upon which such Order is based upon the Defendants' counsel Jeffrey Adams, Esq., c/o Parker, Ibrahim & Berg, LLC., One Financial Center, Boston, Massachusetts, 02111 (attorney for Santander and Fannie Mae) via overnight express delivery no later than November _____, 2017, with the return of service made to this Court by the close of business on November _____, 2017, be deemed good and sufficient service and notice hereof.

1

**DONE AND ORDERED** in Chambers, this _____ day of November, 2017, at

_____ o'clock _____.m.

SO ORDERED.

_____

Hon.

2

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:
PLYMOUTH, SS.

HOUSING COURT DEPT.
SOUTHEASTERN DIV.
Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION
a/k/a FANNIE MAE, and SANTANDER BANK, N.A.
f/k/a/ SOVEREIGN BANK, N.A.**
Defendants

**COMPLAINT**

NATURE OF THE CASE

1.    This is a lawsuit alleging violations of 42 U.S.C. sections 3605 and 3617 (Fair

Housing Act) relating to the modification of a certain loan and subsequent foreclosure of

the real property securing said loan located within the Commonwealth of Massachusetts;

this lawsuit also alleges state violations including fraud, predatory lending,

discrimination, unfair and deceptive practices, and breach of contract relating to the

loan/modification at issue.  This case is sent to this Court on order from the Federal

District Court, Massachusetts District, Young, J.

PARTIES

2.    Plaintiff, REGINALD HALL (hereinafter, "Mr. Hall") at all times relevant hereto

is the co-holder of a certain Note and Mortgage for the premises located at 52 Ash Street,

New Bedford, Massachusetts (hereinafter, the "Note" and "Mortgage", true and accurate

copies of which are attached hereto as Exhibit A). Mr. Hall maintains residences in

Massachusetts, New York, and Georgia at the present time.

1

3.      Plaintiff, ANGELINA HALL, (hereinafter "Mrs. Hall") at all times relevant

hereto is the co-holder of a certain Note and Mortgage (Exhibit A) for the premises

located at 52 Ash Street, New Bedford, Massachusetts (hereinafter, the "Premises"). Mrs.

Hall maintains her residence in Massachusetts at the present time.

4.      Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter,

"Fannie Mae") is a duly formed corporation with usual places of business in many U.S.

states including Massachusetts.  At all times relevant hereto, Fannie Mae was the holder

of the of the Note and Mortgage at issue, true and accurate copies of which are attached

hereto as Exhibit A.  At all times relevant hereto, Fannie Mae utilized SANTANDER

BANK, N.A. as its agent with respect to Fannie Mae's interest in the Premises.

5.      Defendant, SANTANDER BANK, N.A. (hereinafter, "Santander") is formerly

known as SOVEREIGN BANK, N.A. (hereinafter, "Sovereign") and is a duly formed

corporation with usual places of business in many U.S. states including Massachusetts.

Sovereign was the originator and original holder of the Note and Mortgage at issue,

which passed first to Santander and then to Fannie Mae.  For the purposes of the instant

lawsuit, references to Santander includes Sovereign at all relevant times.

FACTS RELEVANT TO ALL COUNTS

6.      Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

7.      The Note and Mortgage were executed by the Plaintiffs on August 27, 2004, and

were duly recorded in the local Registry of Deeds on August 31, 2004, commencing at

Book 7152, page 32.

8.      The Note is secured by the Mortgage on the Premises, which were originated by

Sovereign, then passed to Santander, then passed to Fannie Mae, although Santander

2

continued to act as administrator/handler of the Note and Mortgage for Fannie Mae after Santander transferred its interest in the Note and Mortgage to Fannie Mae.

9.       The Premises is recorded as a Massachusetts Historical Residence, since it hosted one or more events for Frederick Douglas, and since it is a location on the Underground Railway and as such, assisted in the safe harboring of slaves before and during the Civil War.

10.      Mr. Hall is a direct descendant of American slaves, and purchased and restored the Premises due to its historic nature.

11.      As such, the Premises has unique value to the Plaintiffs even beyond the usual, heightened value of being their home.

12.      As such, its loss would be irreparable harm to the Plaintiffs as both their home and a valuable and unique tie to their own and American history.

13.      During and after the recession commencing in 2008, the Premises began losing value in part due to the extreme loss of value to other homes near the Premises.

14.      Plaintiffs contacted Fannie Mae through Santander to refinance/modify the Note and Mortgage at issue.

15.      At all times relevant hereto, Santander acted jointly and severally with Fannie Mae with respect to their actions involving the Premises, as more fully set forth, *infra*.

16.      At all times relevant hereto, Santander and Fannie Mae acted in concert, together, and in a conspiracy to deprive the Plaintiffs of the premises at issue.

17.      At all times relevant hereto, Santander acted intentionally with and on behalf of Fannie Mae with respect to their actions involving the Premises, as more fully set forth, *infra*.

18.     At all times relevant hereto, Santander and Fannie Mae benefitted financially in their actions involving the Premises, as more fully set forth, *infra.*

19.     At all times relevant hereto, Santander and Fannie Mae knew and should have known of the historical nature and value of the Premises, and desired to obtain same from Plaintiffs by any means available to Santander and Fannie Mae.

20.     When Plaintiffs contacted Fannie Mae through Santander to refinance/modify the Note and Mortgage at issue, they were informed that loan refinancing and/or modification was only available to them if the loan installments were not paid up to date; at the time Plaintiffs first contacted Santander to modify the Note, all payments had been made in full and timely.

21.     After several conversations with various employees of Santander, Plaintiffs understood that it was necessary to stop making timely payments on the Note if modification was sought; indeed, Plaintiffs were encouraged to cease payments to even become eligible for modification.

22.     On one or more occasions, Santander employees made false and unsubstantiated claims that Plaintiffs' monthly mortgage payments could and would be reduced through modification.

23.     On one or more occasions, Santander employees encouraged Plaintiffs to stop making timely/full payments in order to successfully modify the Note and Mortgage.

24.     Thereafter, and in reasonable reliance upon representations from Santander employees, Plaintiffs ceased making timely payments under the Note and Mortgage.

25.     Thereafter, and in reliance upon representations from Santander employees,
Plaintiffs caused no fewer than twenty five (25) separate applications for loan
modification to be submitted to Santander to modify the Note and Mortgage at issue.

26.     Plaintiffs submitted no fewer than seventeen (17) modification applications
themselves, and Plaintiffs submitted at least eight (8) additional modification applications
with and through outside assistance, including, but not limited to, assistance from the
offices of United States Senator Elizabeth Warren, Massachusetts Attorney General
Martha Coakley, a consumer advocate from Fannie Mae, and a consumer advocate from
HUD (federal Housing and Urban Development).

27.     In response to the application submissions from Plaintiffs, Santander, acting for
and with Fannie Mae:

     a.  Repeatedly requested additional information and/or documents, even when
     such information and/or documents was already in Santander's possession from
     the Plaintiffs;

     b.  Repeatedly changed the criteria necessary to modify the Note and Mortgage;

     c.  Repeatedly changed the employee handling the case, such that the new
     employee in each instance would inform the Plaintiffs that he/she needed the full
     modification package to be re-submitted since a new employee was handling the
     case going forward;

     d.  Repeatedly delayed action on the pending modification;

     e.  Never notified Plaintiffs directly of any action allowing or denying the
     modification; and

f. Instead, took steps to foreclose upon the Premises upon learning both of the historical nature of the property and the extensive renovations and restoration undertaken by the Plaintiffs to the Premises, which enhanced the value of the Premises for the wrongful benefit of Santander and Fannie Mae.

28.     By the above and other acts and omissions, Santander and Fannie Mae:

a. Committed unfair and deceptive acts;

b. Mishandled loss mitigation by failing to act upon twenty-five (25) separate applications for modification submitted by Plaintiffs;

c. Failed to provide adequate information to the borrowers/Plaintiffs;

d. Failed to assign and train adequate staff for loss mitigation and loss mitigation activities;

e. Committed substantial and intentional delays in processing loss mitigation applications;

f. Notified Plaintiffs of modification applications, agreements and terms, then, after repeated and substantial delays, notified Plaintiffs of new modification applications, agreements and terms;

g. Repeatedly requested documentation previously submitted by Plaintiffs;

h. Mislead Plaintiffs by and through encouraging non-payment of the Note and Mortgage at issue;

i. Ultimately, failed and refused to take any action on the timely and repeated modification submissions and applications from the Plaintiffs, instead electing in bad faith to take the Plaintiffs' unique home in a foreclosure action;

j.  Wrongfully steered Plaintiffs into actions against their best interest but instead in the best interests of Santander and Fannie Mae;

k.  Engaged in lending practices with the Plaintiffs based upon the unique value of the asset to Santander and Fannie Mae instead of Plaintiffs' ability to repay;

l.  Insufficiently disclosed costs/risks associated with modification; and

m.  Discriminated against the Plaintiffs on the basis of race, given the uniqueness of the Plaintiff/decedent of slaves owning a historical home tied so intimately and directly to the free-slave movement.

29.    After failing to act upon more than two dozen modification applications from Plaintiffs, Santander and Fannie Mae elected to foreclose upon the Premises.

30.    Said foreclosure became final in 2015.

31.    In 2016, Santander commenced eviction proceedings, which became final in September, 2017.  A true and accurate copy of certain eviction papers are attached hereto as Exhibit B, indicating, *inter alia,* Fannie Mae's imminent interest and intent to physically evict the Plaintiffs from the Premises.

32.    These actions have caused and continue to cause Plaintiffs harm, including, but not limited to, the loss of their home, and unwanted and unwarranted stress on their marriage.

33.    The bad faith exhibited by Santander and Fannie Mae continues through and including the present, and is ongoing; as recently as December, 2016, Fannie Mae through Santander sent modification proposals to Plaintiffs, but then refused to accept Plaintiffs' application for same.

34.     Subsequent to the foreclosure, but prior to the eviction being finalized, during or about the summer of 2017 Fannie Mae and Santander caused the Premises to be listed for sale through a business known as Auction.com.

35.     Plaintiffs, by and through their agent, Elena Marie Jimenez (hereinafter "Jimenez"), won the bidding to re-purchase their own home from Fannie Mae.  A true and accurate copy of the *fully executed* contract representing the winning bid and intended re-purchase of the home is attached hereto as Exhibit C.

36.     At all times relevant hereto, Plaintiffs disclosed their interest in the re-purchase of the house.  *See, e.g.,* the certified check to re-purchase is from Optimum Labs, Inc. (Exhibit C, page 50), which is and remains the business owned and operated by Plaintiff Angelina Hall; *see also* the Annual Report from the Massachusetts Secretary of State which outright lists Angelina Hall as a principle in Optimum Labs, Inc., *and is incorporated into the executed contract of sale to Plaintiffs' agent, Jimenez.*

37.     At all times relevant hereto, Fannie Mae and Santander knew or should have known of the Plaintiffs interest in the re-purchase.

38.     Nonetheless, Defendants agreed fully to the re-purchase and *fully executed the contract attached hereto as Exhibit C.*

39.     Then, just prior to a closing on the Premises, Defendants cancelled the contract, purportedly due to Fannie Mae's inability to perform.

40.     However, immediately after cancelling the contract attached as Exhibit C, Defendants re-listed the property with a private real estate office for more than twice the agreed upon re-purchase price as indicated in the contract attached hereto as Exhibit C.

Attached hereto as Exhibit D is a true and accurate copy of the cancellation notice of the contract attached as Exhibit C.

41.    By the above and other acts and omissions, Santander and Fannie Mae have committed unfair and deceptive acts.

42.    By the above and other acts and omissions, Santander and Fannie Mae made material misrepresentations to Plaintiffs.

43.    By the above and other acts and omissions, Santander and Fannie Mae caused and continue to cause material harm to Plaintiffs.

44.    The substantial and material harm caused by Santander and Fannie Mae through the above and other acts and omissions is not outweighed by any benefit to Plaintiffs, for which there is none.

45.    Santander's and Fannie Mae's above and other acts and omissions are unreasonable, intentional, in violation of all contracts between the parties, in the alternative, are acts of fraud upon the Plaintiffs, and left the Plaintiffs unable to make any other choice than to attempt modification on Santander's and Fannie Mae's encouragement and advice, especially given that at the time Plaintiffs sought modification, the value of the house had fallen to below the amount of money owed through the Note and Mortgage.

46.    By the above and other acts and omissions, Santander and Fannie Mae committed predatory lending practices.

47.    By the above and other acts and omissions, Santander and Fannie Mae violated and continue to violate the implied covenant and duty of good faith and fair dealing inherent in the Note/Mortgage/contracts at issue.

48.     By the above and other acts and omissions, Santander and Fannie Mae intentionally and transparently delayed action on pending modification applications to deprive Plaintiffs of the unique Premises, all in violation of the within referenced laws, and continue to violate said laws in an ongoing, daily basis.

49.     By the above and other acts and omissions, Santander and Fannie Mae directly and proximately caused Plaintiffs great and ongoing harm, including, but not limited to, the loss of their home and property wrongfully and needlessly.

50.     By the above and other acts and omissions, Santander and Fannie Mae knowingly and intentionally took Plaintiffs' home away from them.

51.     By the above and other acts and omissions, Santander and Fannie Mae failed and refused to act in good faith in taking the Plaintiffs' home, then also in subsequently selling the Premises.

52.     By the above and other acts and omissions, all of which are part of one, on-going scheme between the Defendants from its initiation through and including the cancellation of the contract to sell the home to Jimenez just weeks ago to take Plaintiffs' home/Premises from them wrongfully, especially given its unique historical value.

53.     The above and other acts and omissions from the Defendants constitutes predatory lending practices by the Defendants.

54.     The above and other acts and omissions from the Defendants constitutes breach of all contracts between the parties by the Defendants.

55.     In the alternative, the above and other acts and omissions from the Defendants constitutes fraud by the Defendants.

56.     The above and other acts and omissions from the Defendants constitutes a

conspiracy by the Defendants to obtain and keep the Premises from the Plaintiffs.

57.     At all times relevant hereto, Plaintiffs were required to make use and occupancy

payments to the Defendants while the Premises was in foreclosure and eviction; all of

said payments were timely made.

## AS AND FOR COUNT I:  VIOLATION OF 42 U.S.C. SECTIONS 3605 & 3617
### (Fair Housing Act)

58.     Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

59.     42 U.S.C. section 3605 provides, in relevant part:

(a) It shall be unlawful for any person or other entity whose business includes
engaging in residential real estate-related transactions to discriminate against any
person in making available such a transaction, or in the terms or conditions of
such a transaction, because of race....color...familial status, or national origin.

(b) As used in this section, the term "residential real estate-related transaction"
means any of the following:

(1) The making or purchasing of loans or providing other financial
assistance—

(A) for purchasing, constructing, improving, repairing, or
maintaining a dwelling; or

(B) secured by residential real estate...

60.     Santander for and through Fannie Mae encouraged Plaintiffs to stop making

timely payments on their Note and Mortgage when Plaintiffs inquired to lower their

monthly payments.

61.     Santander for and through Fannie Mae encouraged Plaintiffs to list all of the

reasons why Santander should modify the Note and Mortgage during the application

process.

62.     After disclosing both that the Plaintiffs are African American descendants of

slaves and that the Premises is a valuable and registered Historic Residence due to its ties

to the Underground Railroad and the history of slaves in America, Santander for and

through Fannie Mae thereafter refused to act upon Plaintiffs' multiple modification

applications, as more fully set forth *supra.*

63.     By and through its unreasonable delays, deception, acts, omissions, refusals to act,

and taking of the Premises through foreclosure after Plaintiffs disclosed their race, color,

family status and national origin to Santander and Fannie Mae, as set forth *supra.,*

Defendants have violated and continue to violate the cited provisions of 42 U.S.C. section

3605.

64.     42 U.S.C. section 3617 provides, in relevant part:

>      It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in
> the exercise or enjoyment of, or on account of his having exercised or enjoyed, or
> on account of his having aided or encouraged any other person in the exercise or
> enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606
> of this title.

65.     By and through its unreasonable delays, deception, acts, omissions, refusals to act,

and taking of the Premises through foreclosure after Plaintiffs disclosed their race, color,

family status and national origin to Santander and Fannie Mae, as set forth *supra.,*

Defendants have violated and continue to violate the cited provisions of 42 U.S.C. section

3617, particularly through their interference with Plaintiffs' ownership of and enjoyment

of their unique Premises.

        WHEREFORE, as a direct and proximate result of the Defendants' violations of

42 U.S.C. sections 3605 & 3617, and pursuant to 42 U.S.C. section 3613, Plaintiffs have

suffered and continue to suffer harm and damages, the loss of their unique Premises,

emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.  In addition, pursuant to the rights granted under 42 U.S.C. section 3613, Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than five million ($5,000,000.00) dollars, plus an award of all attorney fees and such other and further relief as may be necessary and just.

### AS AND FOR COUNT II: BREACH OF CONTRACT

66.    Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

67.    The Note and Mortgage at issue constitute valid and binding contracts upon the parties hereto.

68.    The negotiations to modify the Note and Mortgage at issue referenced *supra* constitute ongoing contractual relations between the parties within the contracts/ Note/Mortgage.

69.    Alternatively, the negotiations to modify the Note and Mortgage at issue referenced *supra* constitute new contractual relations between the parties.

70.    As with all contracts, there is an implied covenant of good faith and fair dealing between the parties.

71.    Santander for and through Fannie Mae encouraged Plaintiffs to stop making timely payments on their Note and Mortgage when Plaintiffs inquired to lower their monthly payments.

72.    Santander for and through Fannie Mae encouraged Plaintiffs to list all of the reasons why Santander should modify the Note and Mortgage during the application process.

13

73.    After disclosing both that the Plaintiffs are African American descendants of slaves and that the Premises is a valuable and registered Historic Residence due to its ties to the Underground Railroad and the history of slaves in America, Santander for and through Fannie Mae thereafter refused to act upon Plaintiffs' multiple modification applications, as more fully set forth *supra.*

74.    By and through its unreasonable delays, deception, acts, omissions, refusals to act, and taking of the Premises through foreclosure after Plaintiffs disclosed their race, color, family status and national origin to Santander and Fannie Mae, as set forth *supra.,* Defendants have breached and continue to breach the relevant contracts with Plaintiffs, including but not limited to the implied covenant of good faith and fair dealing.

       WHEREFORE, as a direct and proximate result of the Defendants' breaches set forth *infra* and *supra,* Plaintiffs have suffered and continue to suffer harm and damages, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.  In addition, Plaintiff seeks an award of all attorney fees and such other and further relief as may be necessary and just.

## AS AND FOR COUNT III: FRAUD

75.    Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

76.    In the alternative, if the Court determines that there is no contractual duty breached by Defendants in the conduct of the modifications as set forth *supra,* then it is hereby specifically alleged that the within conduct of Defendants sounds in fraud.

77.    Specifically, Defendants systemically and intentionally induced Plaintiffs into a modification by suggesting and encouraging stopping payments otherwise timely and

14

fully made on the Note and Mortgage, then intentionally disregarding and taking no action on the multiple applications submitted.

78.    Instead, Defendants knowingly and intentionally strung Plaintiffs along through repeated and redundant requests for additional submissions, and also by changing the employees handling the applications and changing the requirements for submissions throughout the process such that Plaintiffs never could satisfy the required submissions called for by Defendants.

79.    In essence, Defendants kept moving the target for action on the modification applications, and no amount of submissions ever did or would have satisfied the Defendants, because once Defendants learned of the historic value of the Premises, the Defendants were determined to obtain the Premises for their own gain, and subsequently did so obtain the Premises.

80.    In response to the application submissions from Plaintiffs, Santander and Fannie Mae:

    a.  Repeatedly requested additional information and/or documents, even when such information and/or documents was already in Defendants' possession from the Plaintiffs;

    b.  Repeatedly changed the criteria necessary to modify the Note and Mortgage;

    c.  Repeatedly changed the employee handling the case, such that the new employee in each instance would inform the Plaintiffs that he/she needed the full modification package to be re-submitted since a new employee was handling the case going forward;

    d.  Repeatedly delayed action on the pending modification;

e.  Never notified Plaintiffs directly of any action allowing or denying the modification; and

f.  Instead, took steps to foreclose upon the Premises upon learning both of the historical nature of the property and the extensive renovations and restoration undertaken by the Plaintiffs to the Premises, which enhanced the value of the Premises for the wrongful benefit of the Defendants.

81.  By the above and other acts and omissions, Santander and Fannie Mae:

a.  Committed unfair and deceptive acts;

b.  Mishandled loss mitigation by failing to act upon twenty five (25) separate applications for modification submitted by Plaintiffs;

c.  Failed to provide adequate information to the borrowers/Plaintiffs;

d.  Failed to assign and train adequate staff for loss mitigation and loss mitigation activities;

e.  Committed substantial and intentional delays in processing loss mitigation applications;

f.  Notified Plaintiffs of modification applications, agreements and terms, then, after repeated and substantial delays, notified Plaintiffs of new modification applications, agreements and terms;

g.  Repeatedly requested documentation previously submitted by Plaintiffs;

h.  Mislead Plaintiffs by and through encouraging non-payment of the Note and Mortgage at issue;

     i.  Ultimately, failed and refused to take any action on the timely and repeated

modification submissions and applications from the Plaintiffs, instead electing in

bad faith to take the Plaintiffs' unique home in a foreclosure action;

     j.  Wrongfully steered Plaintiffs into actions against their best interest but instead

in the best interests of the Defendants;

     k.  Engaged in lending practices with the Plaintiffs based upon the unique value of

the asset to Defendants instead of Plaintiffs' ability to repay;

     l.  Insufficiently disclosed costs/risks associated with modification; and

     m.  Discriminated against the Plaintiffs on the basis of race, given the uniqueness

of the Plaintiff/decedent of slaves owning a historical home tied so intimately and

directly to the free-slave movement.

82.     After failing to act upon more than two dozen modification applications from

Plaintiffs, Defendants elected to foreclose upon the Premises, all in furtherance of their

on-going scheme to wrongfully deprive Plaintiffs of their unique home, which has

subsequently regained much of its value previously lost during the Recession in and

about 2008.

83.     Said foreclosure became final in 2015.

84.     In 2016, Santander commenced eviction proceedings, which concluded during

September, 2017.

85.     Thereafter, Defendants entered into, then cancelled a contract which would have

otherwise permitted Plaintiffs to keep their unique home, all in furtherance of preventing

Plaintiffs from keeping their unique home.

86.     These actions have caused and continue to cause Plaintiffs harm, including, but not limited to, the loss of their home, and unwanted and unwarranted stress on their marriage.

87.     The bad faith exhibited by Defendants continues through and including the present, and is ongoing; as recently as December, 2016, Santander sent modification proposals to Plaintiffs, but then refused to accept Plaintiffs' application for same; as recently as September, 2017, Defendants entered into a contract with Plaintiffs' agent then cancelled same without justification and indeed, by and through a false representation that Defendants could not perform the contract.

88.     By the above and other acts and omissions, Defendants committed and continue to commit a fraud upon the Plaintiffs, and a fraud upon the Courts by utilizing an unlawful scheme to deprive the Plaintiffs of their unique and valuable home.

        WHEREFORE, as a direct and proximate result of the Defendants' fraud set forth *supra,* Plaintiffs have suffered and continue to suffer harm and damages, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.   Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than five million ($5,000,000.00) dollars, plus an award of all attorney fees and such other and further relief as may be necessary and just.

### AS AND FOR COUNT IV: VIOLATION OF M.G.L. CHAPTER 93A

89.     Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

90.     By the above and other acts and omissions, Defendants have violated and continue to violate Massachusetts General Laws, Chapter 93A, sections 2, 9, and 11.

91.   By letter dated February 1, 2017, Plaintiffs put Defendants on notice of the within

violations of M.G.L. Chapter 93A, a true and accurate copy of which is attached hereto as

Exhibit E.

92.   By letter dated February 28, 2017, Defendants responded to Plaintiffs' Chapter

93A letter, a true and accurate copy of which is attached hereto as Exhibit F.

93.   It is specifically alleged that the letter sent to Santander on February 1, 2017,

constitutes notice and/or constructive notice of Plaintiffs' claims under Chapter 93A to

Fannie Mae.

94.   The response from Defendants to the Chapter 93A claims fails to comport with

the requirements of Chapter 93A and constitutes a violation of the spirit and intent of

Chapter 93A response requirements.

WHEREFORE, as a direct and proximate result of the Defendants' violations of

M.G.L. Chapter 93A set forth *supra,* Plaintiffs have suffered and continue to suffer harm

and damages, emotional distress and great anguish, compensatory damages, pecuniary

damages, and other losses set forth herein and in an amount to be determined at trial, but

not less than one million ($1,000.000.00) dollars.   Plaintiffs seek punitive damages in an

amount to be determined at trial, but not less than five million ($5,000,000.00) dollars,

the trebling of all damages, plus an award of all attorney fees and such other and further

relief as may be necessary and just.

## AS AND FOR COUNT V: INJUNCTIVE RELIEF

95.   Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

96.   Pursuant both to the provisions of 42 U.S.C. section 3613, as well as common law

principles of equity regarding the uniqueness of one's home wrongfully taken, and

pursuant to M.R.C.P. Rule 65, Plaintiffs demand that the Court enter an equitable Order, as follows:

    a.      Enjoining and restraining Defendants from evicting Plaintiffs from the Premises during the pendency of the instant action; and

    b.      Enjoining and restraining Defendants from selling the Premises to any individual or entity other than the Plaintiffs during the pendency of the instant action; and

    c.      Ordering Defendants to turn over ownership of the Premises back to Plaintiffs; and

    d.      Ordering Defendants to act in good faith with regard to all past and future applications submitted by Plaintiffs to Defendants; and

    e.      Ordering Defendants to act upon Plaintiffs' modification applications *nunc pro tunc* to the date of Plaintiffs' last mortgage payment and to treat their applications as if it was the date of their last mortgage payment to allow them to be placed in the position they should have been in after following Defendants' encouragement/advice to stop making mortgage payments; and

    f.      Such other and further relief as seems just and reasonable.

### PRAYERS FOR RELIEF:

A. AS AND FOR COUNT I, as a direct and proximate result of the Defendants' violations of 42 U.S.C. sections 3605 & 3617, and pursuant to 42 U.S.C. section 3613, Plaintiffs have suffered and continue to suffer harm and damages, the loss of their unique Premises, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount

to be determined at trial, but not less than one million ($1,000.000.00) dollars.  In addition, pursuant to the rights granted under 42 U.S.C. section 3613, Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than five million ($5,000,000.00) dollars, plus an award of all attorney fees and such other and further relief as may be necessary and just.

B.  AS AND FOR COUNT II, as a direct and proximate result of the Defendants' breaches set forth *infra* and *supra,* Plaintiffs have suffered and continue to suffer harm and damages, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.  In addition, Plaintiff seeks an award of all attorney fees and such other and further relief as may be necessary and just.

C.  AS AND FOR COUNT III, as a direct and proximate result of the Defendants' fraud set forth *supra,* Plaintiffs have suffered and continue to suffer harm and damages, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.  Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than five million ($5,000,000.00) dollars, plus an award of all attorney fees and such other and further relief as may be necessary and just.

D.  AS AND FOR COUNT IV, as a direct and proximate result of the Defendants' violations of M.G.L. Chapter 93A set forth *supra,* Plaintiffs have suffered and continue to suffer harm and damages, emotional distress and great anguish,

compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than one million ($1,000.000.00) dollars.   Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than five million ($5,000,000.00) dollars, the trebling of all damages, plus an award of all attorney fees and such other and further relief as may be necessary and just.

E. AS AND FOR COUNT V, pursuant both to the provisions of 42 U.S.C. section 3613, as well as common law principles of equity regarding the uniqueness of one's home wrongfully taken, and pursuant to M.R.C.P. Rule 65, Plaintiffs demand that the Court enter an equitable Order, as follows:

    a.    Enjoining and restraining Defendants from evicting Plaintiffs from the Premises during the pendency of the instant action; and

    b.    Enjoining and restraining Defendants from selling the Premises to any individual or entity other than the Plaintiffs during the pendency of the instant action; and

    c.    Ordering Defendants to turn over ownership of the Premises back to Plaintiffs; and

    d.    Ordering Defendants to act in good faith with regard to all past and future applications submitted by Plaintiffs to Defendants; and

    e.    Ordering Defendants to act upon Plaintiffs' modification applications *nunc pro tunc* to the date of Plaintiffs last mortgage payment and to treat their applications as if it was the date of their last mortgage payment to allow them to be placed in the position they should have been

in after following Defendants' encouragement/advice to stop making

mortgage payments; and

f.       Such other and further relief as seems just and reasonable.


PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Dated at Wantagh, NY this 31ST
day of October, 2017

Yours, etc.,

Plaintiffs, by counsel,

Harry R. Thomasson, Esq.
3280 Sunrise Highway
Suite 112
Wantagh, New York  11793
Tel. 516-557-5459

23

## DECLARATION OF REGINALD HALL

I, REGINALD HALL, do hereby declare under the pains of perjury that I have read the foregoing complaint, and it is true to the best of my knowledge. My knowledge consists of my own first hand knowledge, along with a review of the facts and evidence in this case. I am a Plaintiff in the instant action.

October 31, 2017

REGINALD HALL

## DECLARATION OF ANGELINA HALL

I, ANGELINA HALL, do hereby declare under the pains of perjury that I have read the foregoing complaint, and it is true to the best of my knowledge. My knowledge consists of my own first hand knowledge, along with a review of the facts and evidence in this case. I am a Plaintiff in the instant action.

October 31, 2017

_____
ANGELINA HALL

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:                             HOUSING COURT DEPT.
PLYMOUTH, SS.                       SOUTHEASTERN DIV.
                                        Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
**a/k/a FANNIE MAE, and SANTANDER BANK, N.A.**
**f/k/a/ SOVEREIGN BANK, N.A.**
Defendants

## FIRST AFFIRMATION OF HARRY THOMASSON IN SUPPORT OF EMERGENCY APPLICATION FOR A TRO and APPLICATION FOR A PRELIMINARY INJUNCTION

HARRY R. THOMASSON, ESQ., hereby affirms under penalty of perjury as follows:

1.      My name is Harry R. Thomasson, Esq., and I am an attorney duly admitted to practice before the Courts for the Commonwealth of Massachusetts and the United States District Court for Massachusetts. I represent the Plaintiffs in the instant action. I have first-hand knowledge of the facts recited herein.

2.      Attached hereto as Exhibit A is a true copy of the Note and Mortgage for 52 Ash Street, New Bedford, Massachusetts, at issue herein. Attached hereto as Exhibit B is a true copy of the eviction papers served upon my clients recently. Attached hereto as Exhibit C is a true copy of the contract between the parties through their respective agents for the re-purchase of the Premises at issue. Attached hereto as Exhibit D is a true copy of the notice received just weeks ago by my clients cancelling the contract attached hereto as Exhibit C. Attached hereto as Exhibit E is a true copy of the M.G.L. Chapter

1

93A letter served upon the Defendants through Santander Bank; attached hereto as Exhibit F is a true copy of the Defendants' reply to the M.G.L. Chapter 93A I sent them on February 1, 2017.

3.   I submit this Affirmation in support of the emergency Application for a Temporary Restraining Order and Preliminary Injunction attached hereto.

4.   I allege that this is an emergency because of the imminent eviction of my clients from the Premises at issue; I commenced an action identical to this action in the Federal District Court (Boston) on October 20, 2017, and the Court entered an initial stay of any eviction of my clients from their home, but the Court indicated at a hearing on October 26, 2017, that it was its intention to lift the stay this week, allowing me time to commence this action as the Federal Court (Young, J.) preferred.  The Federal Court has not yet entered an order lifting the stay.

5.   No application for this or similar relief is pending in any Court within or without the Commonwealth.

6.   The instant application is made under M.R.C.P. Rule 65.  I gave notice to the attorney for Santander Bank and Fannie Mae on October 31, 2017, via email/letter, a true and accurate copy of which is attached hereto as Exhibit G.  Attached hereto as Exhibit H are true copies of the Court's Orders entered to date by the Federal Court in Boston recently when we attempted to bring this action before that Court (civil docket number 2017-cv-12067).  It is my intention to appear before this Court, if necessary, on Friday, November 3, 2017, as I so informed opposing counsel for the Defendants, or at such other time as the Court may order, except that I am unable to appear on Monday, November 6, due to a previous commitment in New York on that date.

7.     Accordingly, I submit the Emergency Application and supporting papers as an Emergency application due to the stay having been lifted on the eviction which can proceed at any time hereafter.

8.     The home at issue serves as the Plaintiffs' home and permanent residence, notwithstanding certain marital difficulties that has arisen directly due to the circumstances of this case.

9.     I have verified that the home is on the Historic Register, as it was part of the former Underground Railway to assist escaped slaves during and before the American Civil War; my clients have spent in excess of one hundred thousand dollars ($100,000.00) restoring it to its original condition.

10.     I possess and have reviewed over two dozen emails with submissions from my clients to the Defendants that took place over years from 2010 through 2016 attempting to modify their note/mortgage and keep their home; in each instance, the Defendants constantly and consistently in their responses 1) made additional requests for more documents; 2) ignored instances where the Defendants already possessed documents from separate/previous submissions; 3) changed the employee handling the case; 4) failed to ever actually deny the Plaintiffs' applications/submissions.

11.     This Court is well aware of the uniqueness in law of a person's home; this home is even more unique for these Plaintiffs than most.

12.     The most remarkable aspect of this case actually took place *after* the eviction at issue.

13.     As set forth in Exhibit C, my clients entered into a contract with the Defendants through their fully disclosed agent (as more fully set forth in my clients'

3

Affidavits accompanying hereto), which the Defendants cancelled via Exhibit D on September 28, 2017.

14.    The next day, September 29, 2017, the Defendants listed the same house for sale via the true and accurate copy of their listing attached hereto as Exhibit I. Please note carefully, Exhibit I, a real estate advertisement selling the home at issue, was created *the next day* after Exhibit D, which indicated cancellation of the sale due to "seller unable to perform."

15.    Only one conclusion may be drawn from Exhibits D and I:  The Defendants are engaged in unfair business practices regarding the property at issue, especially with the other documentation submitted herewith taken into consideration.

16.    Accordingly, we ask that this Court grant the application in all respects to allow the Plaintiffs the opportunity to keep their home where they continue to reside at this time.

17.    Lastly, this Court should be aware that no harm may come to the Defendants by allowing the instant application; the Plaintiffs have made every payment for use and occupancy since this Court originally ordered same, and shall continue to make such payments monthly going forward if this Court prevents the eviction from proceeding during the pendency of this action.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on October 31, 2017.

HARRY R. THOMASSON

4

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:                                    HOUSING COURT DEPT.
PLYMOUTH, SS.                                   SOUTHEASTERN DIV.
                                                Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION
a/k/a FANNIE MAE, and SANTANDER BANK, N.A.
f/k/a/ SOVEREIGN BANK, N.A.**
Defendants

## <u>FIRST AFFIDAVIT OF ANGELINA HALL IN SUPPORT OF
EMERGENCY APPLICATION FOR A TRO and
APPLICATION FOR A PRELIMINARY INJUNCTION</u>

ANGELINA HALL, having been duly sworn, hereby sets forth the following under

the pains and penalties of perjury:

1. My name is Angelina Hall, and I am the Plaintiff in the within action.  My

    husband is Reginald Hall.  As such, I have first-hand knowledge of the within

    facts; anything I allege on information and belief I fully believe to be true.

2. My husband and I commenced efforts to modify the mortgage on our home

    during and after the Great Recession.  Most of the contact during the modification

    process through and including the failed attempt to buy back our home just weeks

    ago was between my husband and the Defendants, although 1) I was kept

    informed at all times by my husband of what was going on; 2) he copied me on

    everything exchanged between the parties; 3) I did speak with the Defendants'

    representatives during the buyback process to verify our involvement and to

    provide the certified funds through my company, Optimum Labs, Inc.; 4) I

1

arranged for the agent, Ms. Jimenez, which was suggested by one or more
employees of Auction.com as helping with the buy back; Ms. Jimenez is an
employee at Optimum Labs and offered to help when it was suggested during the
buy back; and 5) I fully disclosed to the Defendants my interest in Optimum Labs
since the beginning of the modification process, literally years ago.

3. Our home is formerly part of the Underground Railroad, and hosted one or two
   speeches by Frederick Douglas during or just after the American Civil War.

4. The Defendants' representatives with whom we dealt during our attempts to
   modify our mortgage/note at 52 Ash Street in New Bedford, Massachusetts,
   constantly changed, and constantly made additional requests for documentation.

5. No matter what documents we got to them, they constantly asked for more, never
   completely asking for everything in any one request.

6. No matter what we sent, it was never enough.

7. Throughout the modification process, we were constantly and consistently told by
   the Defendants' representatives that we need not and should not make payments
   on our note/mortgage in order to remain eligible for modification.

8. Also, I cannot understand how our mortgage went from just over $400,000.00 at
   the start of the modification process to more than $700,000.00 today.

9. Nonetheless, we made clear repeatedly, through me and through our attorneys,
   that all we wanted was to modify our mortgage (at first), then to buy back our
   home (after foreclosure and throughout the eviction process that just ended in
   September, 2017).

10. The Defendants listed our home for sale this summer through a business known as Auction.com.

11. We told the Defendants directly, as well as through our attorneys/their attorneys, that we wanted to buy back our home.

12. As we attempted to re-purchase our home this summer from the Defendants through Auction.com we fully disclosed that Ms. Jimenez was our agent.

13. The contract attached hereto as Exhibit C was fully executed by the parties and includes a check from my business as requested from the Defendants at page 50-53 as being the source of the money for the purchase.

14. The contract attached hereto as Exhibit C was fully executed by the parties and includes the secretary of state listing for me through Optimum Labs, Inc., at page 52 as being the source of the money for the purchase.

15. The contract was fully executed with full disclosure of our involvement.

16. The Defendants cancelled the contract by telling us only that the Defendants could not perform the contract, but then they immediately re-listed the property for sale through a local New Bedford real estate office.

17. We ask that the Court recognize that we do not want to be evicted from our home.

18. Attached hereto as Exhibit B are true and accurate papers pertaining to the eviction that indicate the Defendants are evicting us as of Monday, October 23, 2017.

19. We urgently and emergently ask that this Court stop that eviction during the pendency of this action.

3

20. While it's true that we seek compensation for the Defendants' acts and omissions set forth in the Complaint accompanying this Declaration, it is our stunningly unique home and our own and its ties to the Civil War and slavery that necessitates an injunction in this instance.

21. Throughout the foreclosure and modification processes, we dealt with Santander and its employees on behalf of Fannie Mae, which they never made clear to us.

22. The Complaint in this action is incorporated herein by reference and more fully sets forth the Defendants' acts and omissions in this process.

23. We remain able and willing to buy back our own home, but the Defendants have thwarted us at every turn, first by constantly moving the target during modification, then by denying us the ability to buy back our home even after contracting to allow just that to happen.

24. For these reasons, we ask that the Court enter an appropriate order allowing us to continue to pay for the use and occupancy of 52 Ash Street, New Bedford, Massachusetts, and to remain in the home during the pendency of this action.

25. We have been paying and continue to pay all payments for use and occupancy ($2,000 per month) since it was first ordered in the eviction process.

26. Defendants cannot be harmed given that we're making all necessary payments that they requested, but my husband and I may lose the stunningly unique home that means so much to us as decedents of slaves.

27. Accordingly, we ask that the Court grant the Order to Show Cause accompanying this Declaration in all respects.

4

DATED:  October 31, 2017

ANGELINA HALL

Sworn before me this _31_
day of October, 2017.

Notary Public      7-5-2024

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS:                                        HOUSING COURT DEPT.
PLYMOUTH, SS.                                       SOUTHEASTERN DIV.
                                                   Docket No.: 2017-

**REGINALD HALL and ANGELINA HALL**
Plaintiffs

vs.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
**a/k/a FANNIE MAE, and SANTANDER BANK, N.A.**
**f/k/a/ SOVEREIGN BANK, N.A.**
Defendants

**FIRST AFFIDAVIT OF REGINALD HALL IN SUPPORT OF**
**EMERGENCY APPLICATION FOR A TRO and**
**APPLICATION FOR A PRELIMINARY INJUNCTION**

REGINALD HALL, having been duly sworn, hereby sets forth the following under

the pains and penalties of perjury:

1. My name is Reginald Hall, and I am the Plaintiff in the within action. As such, I
   have first hand knowledge of the within facts; anything I allege on information
   and belief I fully believe to be true.

2. My wife and I commenced efforts to modify the mortgage on our home during
   and after the Great Recession.

3. Our home is formerly part of the Underground Railroad, and hosted one or two
   speeches by Frederick Douglas during or just after the American Civil War.

4. The Defendants' representatives with whom I dealt during our attempts to modify
   our mortgage/note at 52 Ash Street in New Bedford, Massachusetts, constantly
   changed, and constantly made additional requests for documentation.

1

5. No matter what documents I got for them, they constantly asked for more, never completely asking for everything in any one request.

6. No matter what we sent, it was never enough.

7. Throughout the modification process, I was constantly and consistently told by the Defendants' representatives that we need not and should not make payments on our note/mortgage in order to remain eligible for modification.

8. Also, I cannot understand how our mortgage went from just over $400,000.00 at the start of the modification process to more than $700,000.00 today.

9. Nonetheless, we made clear repeatedly, through me and through our attorneys, that all we wanted was to modify our mortgage (at first), then to buy back our home (after foreclosure and throughout the eviction process that just ended in September, 2017).

10. The Defendants listed our home for sale this summer through a business known as Auction.com.

11. We told the Defendants directly, as well as through our attorneys/their attorneys, that we wanted to buy back our home.

12. Throughout the years the Defendants knew and continue to know that my wife, Angelina, is the owner/operator of Optimum Labs, Inc.

13. As we attempted to re-purchase our home this summer from the Defendants through Auction.com we fully disclosed that Ms. Jimenez was our agent.

14. The contract attached hereto as Exhibit C was fully executed by the parties and includes a check as requested from the Defendants at page 50-53 as being the source of the money for the purchase.

15. The contract attached hereto as Exhibit C was fully executed by the parties and includes the secretary of state listing for my wife through Optimum Labs, Inc., at page 52 as being the source of the money for the purchase.

16. The contract was fully executed with full disclosure of our involvement.

17. The Defendants cancelled the contract by telling us only that the Defendants could not perform the contract, but then they immediately re-listed the property for sale through a local New Bedford real estate office.

18. We ask that the Court recognize that we do not want to be evicted from our home.

19. Attached hereto as Exhibit B are true and accurate papers pertaining to the eviction that indicate the Defendants are evicting us as of Monday, October 23, 2017.

20. We urgently and emergently ask that this Court stop that eviction during the pendency of this action.

21. While it's true that we seek compensation for the Defendants' acts and omissions set forth in the Complaint accompanying this Declaration, it is our stunningly unique home and our own and its ties to the Civil War and slavery that necessitates an injunction in this instance.

22. Throughout the foreclosure and modification processes, we dealt with Santander and its employees on behalf of Fannie Mae, which they never made clear to us.

23. The Complaint in this action is incorporated herein by reference and more fully sets forth the Defendants' acts and omissions in this process.

24. We remain able and willing to buy back our own home, but the Defendants have thwarted us at every turn, first by constantly moving the target during

modification, then by denying us the ability to buy back our home even after contracting to allow just that to happen.

25. For these reasons, we ask that the Court enter an appropriate order allowing us to continue to pay for the use and occupancy of 52 Ash Street, New Bedford, Massachusetts, and to remain in the home during the pendency of this action.

26. We have been paying and continue to pay all payments for use and occupancy ($2,000 per month) since it was first ordered in the eviction process.

27. Defendants cannot be harmed given that we're making all necessary payments that they requested, but my wife and I may lose the stunningly unique home that means so much to us as decedents of slaves.

28. Accordingly, we ask that the Court grant the Order to Show Cause accompanying this Declaration in all respects.

DATED:  October 31, 2017

REGINALD HALL

Sworn before me this _31_
day of October, 2017.

Notary Public   7-5-2024

# EXHIBIT A

# NOTE

August 27, 2004                          New Bedford,                          Massachusetts
                                           [City]                                [State]

52 Ash Street, New Bedford, Massachusetts 02740
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $352,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Sovereign Bank. I will make payments under this Note in the form of cash, check, or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.3750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First day of each month beginning on October 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2034 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1 Compass Place, New Bedford, Massachusetts 02740 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,196.03.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT
©1986-2004 Standard Solutions, Inc. 781-324-0550

Form 3200 1/01  (page 1 of 3 pages)
FNNote

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.0000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT
©1986-2004 Standard Solutions, Inc. 781-324-0550

Form 3200 1/01 (page 2 of 3 pages)
FNNote