```
                UNITED STATES DISTRICT COURT

                  DISTRICT OF MASSACHUSETTS

                            No. 1:17-cv-12269-WGY


REGINALD HALL and ANGELINA HALL,
          Plaintiffs


vs.


SANTANDER BANK and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,
          Defendants


                         *********


                    For Hearing Before:
                  Judge William G. Young


                 Temporary Restraining Order


                    United States District Court
                    District of Massachusetts (Boston)
                    One Courthouse Way
                    Boston, Massachusetts 02210
                    Monday, November 19, 2018


                         ********


            REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
                United States District Court
      One Courthouse Way, Room 5510, Boston, MA 02210
                  bulldog@richromanow.com
```

```
 1                    A P P E A R A N C E S

 2


 3    HARRY R. THOMASSON, JR., ESQ.
         Law Office of Harry R. Thomasson, Esq.
 4       3280 Sunrise Highway, Suite 112
         Wantagh, NY 11793
 5       (516) 557-5459
         Email: Hrtatty@verizon.net.
 6       For Plaintiffs


 7


 8    JEFFREY D. ADAMS, ESQ.
         Parker Ibrahim & Berg, LLC
 9       One Financial Center
         Boston, MA 02111
10       (617) 918-7600
         Email: Jeffrey.adams@piblaw.com
11       For Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                P R O C E E D I N G S
 2                (Begins, 3:15 p.m.)
 3                THE CLERK:  Now hearing Civil Matter 17-12269,
 4    Hall versus Santander Bank.
 5                THE COURT:  Good afternoon.  Would counsel
 6    identify themselves.
 7                MR. THOMASSON:  Good afternoon, your Honor,
 8    Harry Thomasson, 3280 Sunrise Highway, Suite 112,
 9    Wantagh, New York, for Reginald Hall and Angelina Hall.
10          Your Honor, Ms. Gaudet also informed me, um, our
11    expert is not an attorney so I asked if she could sit at
12    counsel table with me, and she wanted me to just make
13    sure the Court knew her name.  Her name is Marie
14    McDonald.
15                THE COURT:  She's welcome and she may sit at
16    counsel table.  I do not anticipate that this would be
17    an evidentiary hearing.
18                MR. THOMASSON:  I understand, Judge, it's just
19    for my help.
20                MR. ADAMS:  Good afternoon, your Honor, Jeff
21    Adams on behalf of Santander Bank and Federal
22    National Mortgage Association.
23                THE COURT:  Yes, well good afternoon.
24        I would like to introduce that we have two judges
25    from the district courts of Japan who are observing our
```

1   procedures and I welcome them to this courtroom, and I
2   wanted to note their presence.
3        Now, on Thursday afternoon I got a rather chatty
4   letter from Mr. Thomasson and in it he speaks very
5   highly of you, Mr. Adams, so why don't I start with you.
6        What's going on?
7             MR. ADAMS:  Your Honor, back in September of
8   2017 the housing court, um --
9             THE COURT:  I don't need the full -- here's my
10  concern, here's why -- based on a letter to the Court, I
11  entered a temporary restraining order, which is
12  extraordinary for me.  I did that because there is the
13  claim that there was what I'll refer to as a "standstill
14  agreement," at least through the 29th when Santander's
15  motion to dismiss could be heard, and that Santander
16  reneged on it -- not you, but the bank.  Explain that to
17  me?  That's my concern.
18            MR. ADAMS:  Your Honor, neither Santander or
19  Fannie Mae reneged on that agreement to not enforce the
20  order from the Court to evict the plaintiffs, what
21  happened is the order from the Court had expired because
22  of a certain amount of time passing, since it was issued
23  by the housing court.  So the eviction counsel went into
24  court and ordered to have it renewed.
25       There was no directive, no intent to go ahead and

1   move forward with the eviction of the plaintiffs here.
2   I spoke with Mr. Thomasson Thursday morning, he called
3   me concerned with that, I told him I would contact my
4   clients and find out what was going on.  I reached back
5   out to Mr. Thomasson, left him a voice mail, never heard
6   back from him.
7         Upon receiving his letter, your Honor, on
8   Thursday, within the hour I had an e-mail to the clerk
9   of the court informing this Court that neither Fannie
10  Mae, who has to power to evict, nor Santander, both my
11  clients, had any intent to move forward with the
12  eviction prior to this Court's order of November 29th,
13  um, the oral argument on plaintiffs's motion for
14  preliminary injunction.
15        I was very clear, your Honor, with the e-mail that
16  I sent on Thursday and I've been clear all along with
17  Attorney Thomasson that there would be no attempt to
18  evict the plaintiffs without prior notice.  I was well
19  aware that plaintiffs had filed a motion to enjoin, um,
20  such an eviction, and I stuck to my word, your Honor,
21  and I spoke with my clients and they had no intent to
22  move forth with the eviction.
23             THE COURT:  Thank you.
24         So, Mr. Thomasson, um, I want to tell you that the
25  practice in this court --

1        Where did you learn to write letters to a court
2   seeking action from a court?
3           MR. THOMASSON:  Judge, all I wrote to --
4           THE COURT:  First my question.  Where did you
5   learn that?
6           MR. THOMASSON:  First of all, it happens in
7   New York all the time.
8           THE COURT:  Well it's improper in this court.
9   So let's start out with that.  Don't ever again write a
10  letter to this court, because if you do, I won't read it
11  the next time.  The only thing you write to this court
12  is a motion.
13       Now I don't mind a chatty motion, but it's got to
14  be a motion, which can be properly docketed and I'll
15  decide whether I'll treat it ex parte or not.  Now pro
16  ses write "letters" to the Court.  This Court is not in
17  the habit of receiving letters and I don't ever want to
18  see a letter again.
19       Now having said that, now that I get into this,
20  you know -- it's almost like -- well I'll get back to
21  Mr. Adams.
22       Mr. Adams, you removed the case to this court,
23  right?
24          MR. ADAMS:  That's correct, your Honor.
25          THE COURT:  Now you removed it because on

1    their complaint arguably it's got federal claims in it,
2    but the gravamen -- because now, having galvanized
3    myself into shall I grant emergency relief?  And
4    somewhat embarrassed, but I've -- I'm beyond that,
5    having just endorsed temporary relief on a letter
6    without, for instance, giving you a chance to file the
7    e-mail that you said you filed, um, and having called
8    for a hearing, that's not my practice and all counsel
9    should understand that.  Still I've prepared for this
10   hearing.  The law clerks have turned too, I mean we're
11   getting set for the hearing on the 29th.
12          Your -- the gravamen of your motion to dismiss is,
13   in essence it's all over, it's all been decided in the
14   housing court of Southeastern, Massachusetts, and I will
15   tell you that appears to be correct.  So it looks to me
16   like I don't have subject matter jurisdiction.  Under
17   *Rooker v. Feldman*, it also looks to me that the case was
18   improvidently removed because if there's to be a
19   collateral attack on the final unappealed order of the
20   housing court of Southeastern, Massachusetts, it should
21   be in that court.
22          Now you think that makes sense, don't you?
23              MR. ADAMS:  Your Honor, I understand your
24   point and it does make sense, however we did remove
25   based on two reasons, one, based on a federal question,

```
 1   certainly, but also on diversity, Santander is not a
 2   citizen of Massachusetts, nor is Fannie Mae --
 3             THE COURT:  Ah --
 4             MR. ADAMS:  -- and a threshold question
 5   exceeds 75,000.
 6             THE COURT:  Yes.  You know I mean to raise
 7   that with you.
 8        I read a very interesting article in the Globe,
 9   maybe someone has called it to your attention, it's
10   entitled "Scott Powell is Running Santander under Less
11   Stress," November 11th, 2018.  It strongly suggests that
12   the principal place of business in the United States of
13   Santander is within this district.
14        Now I'm not unaware that there is a suggestion in
15   a decision -- *Wachovia,* and you know the law here, that
16   banks can only be sued in their -- where the
17   association's personal place of business is, and that is
18   Delaware.
19             MR. ADAMS:  That's correct, your Honor.
20             THE COURT:  That's an open question in the
21   First Circuit.  I wonder if you want me to consider that
22   question?
23             MR. ADAMS:  Well, your Honor, there hasn't
24   been a motion to remand, I'll note that, but then also,
25   your Honor --
```

1         THE COURT:  But of course I can do that on my
2    own motion.
3         MR. ADAMS:  Your Honor, you certainly can.  We
4    have argued this before other district court judges in
5    this jurisdiction, your Honor, who've agreed that
6    Santander is a citizen of the State of Delaware.
7         THE COURT:  Yeah.  Oh, I understand the
8    different argument.  The First Circuit hasn't spoken to
9    it.  You're their -- you're counsel for them, I'm sure
10   this is an issue that's come up, but when you raise it,
11   I simply want to throw that out to you.
12        Even with diversity your position is there's
13   nothing here for me to do, nothing for me to do because
14   everything's been done in the housing court of
15   Southeastern, Massachusetts.  So if you've got
16   everything that you want, I would dismiss this action on
17   the grounds of claim preclusion, right, that's what you
18   want on the 29th?
19        MR. ADAMS:  That's correct, your Honor,
20   pursuant to judgments from the Southeast housing court
21   and a judgment from the Bristol Superior Court for --
22        THE COURT:  Of course.  Well why isn't it more
23   consonant with *Rooker v. Feldman*, on my own motion, to
24   remand this to the housing court of Southeastern
25   Massachusetts where, if they had any hope of making a

```
 1    collateral attack, having never appealed on the decision
 2    of that court, they can address the Court directly,
 3    rather than wrestling with that here?
 4              MR. ADAMS:  Your Honor, for many different
 5    reasons of which I'm sure your Honor is aware.
 6              THE COURT:  Actually -- I'm not just being
 7    rhetorical, I'm not, I don't understand why you came
 8    here?
 9              MR. ADAMS:  Okay.  When presented with the
10    opportunity to litigate these cases in federal court as
11    opposed to the state courts, we find that the federal
12    courts and its judges have more time, resources, and
13    opportunity to review pleadings and matters and, um,
14    render decisions which we believe are pursuant to the
15    law in a more efficient manner.
16              THE COURT:  I follow.
17              MR. ADAMS:  Your Honor, it's been my
18    experience, over 10 years of practicing, that a case
19    with issues like this could spend years in state court
20    even where such strong arguments of res judicata present
21    itself, among others.
22         And so, your Honor, given my experience, given my
23    client's preferences -- and, your Honor, honestly
24    referring back to the exact same complaint plaintiffs
25    previously filed before your Honor, which you reviewed
```

```
 1    and said to the plaintiffs, "This belongs to be
 2    reviewed" -- "This should be reviewed on appeal at the
 3    state level."  So -- so what happened thereafter, your
 4    Honor --
 5              THE COURT:  I've looked at the docket.
 6              MR. ADAMS:  What happened thereafter, your
 7    Honor, is that because they had lost the opportunity to
 8    appeal because they missed this deadline, they went
 9    ahead and just filed the exact same complaint in state
10    court.  Given the availability to remove it, which we
11    believe that we have, we chose that option for the
12    reasons I just presented to you.
13              THE COURT:  Thank you.  I very much appreciate
14    your candid answer.  However, in the same manner, it
15    isn't a question of forum shopping, it's a question of
16    jurisdiction under the law.  Given *Rooker vs. Feldman*,
17    and the strong argument that res judicata does exist,
18    the one thing you --
19         Where did they originally file the case that is
20    now --
21              MR. ADAMS:  Down in the Southeast housing
22    court, your Honor.
23              THE COURT:  Yeah, well that's where it would
24    go.
25         Well I'm disposed to send it back there, despite
```

```
 1   your argument.
 2           Mr. Thomasson, why don't I do that right now?
 3              MR. THOMASSON:  First, Judge, first of all I
 4   just want to clear up one thing.  I don't agree that
 5   this Court was sending us back to the Southeast housing
 6   court for the --
 7              THE COURT:  Well that's my question, why
 8   shouldn't I?
 9              MR. THOMASSON:  -- for the purpose of an
10   appeal.
11              THE COURT:  I'm not sending you back for the
12   purpose of an appeal, it appears to me that your rights
13   are gone.
14              MR. THOMASSON:  I have a very strong argument
15   on the subject of res judicata, Judge, and I know that
16   -- it sounds like we're not going to make it here.
17              THE COURT:  It does.
18              MR. THOMASSON:  So I'll just say it, in equal
19   candor, Judge, to Mr. Adam's candor, that I did not put
20   up the strongest of arguments with this court when you
21   said that our complaint last year before you should have
22   been more rightfully brought in the Southeast housing
23   court because when you said it you caught me off guard
24   because I hadn't really given it complete consideration,
25   I thought that with my federal claims I should be here,
```

and you pointed out that I still could be there with them and that's where we should go.  And I didn't put up the biggest argument in the world because I thought, quite candidly when you said it, that you were right, and especially in citing *Feldman*.

    So I just want to say that if the Court is inclined to do that, I don't have much of an argument to tell you not to.

THE COURT:  I think I am required to under the law.

MR. THOMASSON:  Right.

THE COURT:  Therefore the temporary restraining order the Court has earlier entered is vacated, the case is remanded, on the Court's own motion, to the housing court of Southeastern Massachusetts.  That's the order of the court.

MR. THOMASSON:  Judge, may I ask one thing?

THE COURT:  Of course.

MR. THOMASSON:  When we did this last year, for the purpose of having the time to refile paperwork, I mean this remand -- this is remanded to housing court. Last year you instructed me to go file it there and you gave me a TRO for enough time to go do it.

THE COURT:  Now you have to ask them.

MR. THOMASSON:  Right, now it's being

Case 1:17-cv-12269-WGY Document 56 Filed 12/03/18 Page 14 of 15

14

1  remanded.  There's a difference.
2           THE COURT:  There is.
3           MR. THOMASSON:  And, um, is -- right, I have
4  to go ask them.  The same thing, yeah.
5           THE COURT:  Correct.  The case is alive.  I
6  think I will -- though I accept everything that
7  Mr. Adams said, I will say he appears to be acting
8  honorably throughout, but I don't think I have subject
9  matter jurisdiction to enter a temporary restraining
10 order.
11    The case is remanded to that court.  All your
12 arguments, strong or not, shall be addressed to that
13 court.  That's the order of the court.  It's remanded.
14 We're in recess.
15          (Ends, 3:30 p.m.)
16
17
18
19
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E
 2
 3        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 4   do hereby certify that the foregoing record is a true
 5   and accurate transcription of my stenographic notes
 6   before Judge William G. Young, on Monday, November 19,
 7   2018, to the best of my skill and ability.
 8
 9
10
11   /s/ Richard H. Romanow 12-03-18
     _____
12   RICHARD H. ROMANOW    Date
13
14
15
16
17
18
19
20
21
22
23
24
25
```